UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY J. D'ADDARIO, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____) | 3:13-cv-00709-HDM-VPC<br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE**<br><br>September 29, 2014 |

This Report and Recommendation is made to the Honorable Howard D. McKibben, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for reversal or remand (#13).[1] Defendant filed a reply (#15) and a cross-motion to affirm (#14). For the reasons set forth herein, the court recommends that plaintiff's motion be denied, and defendant's cross-motion be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 6, 2011, plaintiff Anthony J. D'Addario ("plaintiff") filed for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") payments under Titles II and XVI of the Social Security Act. (Administrative Record ("AR") 38). Plaintiff alleged his disability commenced on January 1, 2008, but later amended the alleged onset date to October 1, 2008. (AR 38). Defendant Commissioner denied plaintiff's application in the first instance, and also on reconsideration. (AR 38).

---

[1] Refers to the court's docket number.


On August 31, 2011, plaintiff and his attorney appeared at a hearing before Administrative Law Judge ("ALJ") Eileen Burlison. (AR 38). The ALJ issued a written decision on July 23, 2012, which found that plaintiff had "not been disabled" at any time from October 1, 2008 through the decision date. (AR 38, 42-46). Plaintiff appealed, and the Appeals Council denied review. (AR 5-8). Accordingly, the ALJ's decision became the final decision of the Commissioner.

On December 27, 2013, plaintiff filed through counsel a complaint for judicial review (#1), following defendant's allowance of a filing extension. (AR 1-2). In his present motion, plaintiff argues that the ALJ's decision failed to sufficiently explain her finding that he lacked credibility as to his asserted symptoms and limitations. (#13 at 5-8). In addition, plaintiff contends that the ALJ erred in her step five vocational finding by failing to identify jobs that exist in significant number "in several regions" that he can perform. (#13 at 9-10). On these bases, plaintiff asks the court to reverse or remand. (#13 at 10).

## II. STANDARD OF REVIEW

This court has jurisdiction to review an ALJ's decision denying a claim for SSI and SSDI benefits after the plaintiff has exhausted administrative remedies. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012). The court must affirm the ALJ's decision unless it rests on legal error or is unsupported by substantial evidence in the administrative record. *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citations omitted); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). The substantial evidence standard is not onerous: it is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (citation and quotation omitted).

To determine whether substantial evidence exists, the court examines the entire record, considering both evidence that supports and undermines the ALJ's decision. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted) ("a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"). Yet "if the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (citation omitted). The ALJ alone is responsible for determining credibility and resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The burden of proof rests upon the claimant to establish his disability. 20 C.F.R. §§ 404.1512(a), 416.912(a); *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To satisfy this burden, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423 (d)(1)(A).

### III. DISCUSSION

**A.   SSDI and SSI claims are evaluated under a five-step sequential process.**

The Commissioner follows a five-step sequential process for determining whether a claimant is disabled for the purposes of SSDI and SSI. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). The Commissioner ends the process if, at any step, it finds disability or nondisability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled and the Commissioner denies the claim. *Id.* §§ 404.1520(b), 416.920(b).

The second step requires the ALJ to determine whether the claimant's medically determinable impairment is "severe." *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "Severe" impairments are those that significantly limit the claimant's physical or mental ability to do basic work activities. *Id*. §§ 404.1520(c), 416.920(c). The Commissioner denies the claim where the claimant lacks a severe impairment, or a severe combination thereof. *Id*. §§ 404.1520(c), 416.920(c).

In step three, the claimant's impairment is compared to the Agency's impairment list. *Id*. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also id*. § 404, Subpt. P, App. 1 ("Listed Impairments"). Where the claimant's impairment is contained on the list, or is equivalent to the impairments expressed therein, and the claimant also meets the corresponding durational requirement, the claimant is presumed disabled. *Id*. §§ 404.1520(d), 416.920(d).

If the Commissioner does not find disability at step three, however, review of the claim proceeds to the fourth step: whether the claimant can perform past relevant work. *Id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant is not disabled where he can engage in such work. *Id*. §§ 404.1520(e), 416.920(e). If the claimant cannot perform past relevant work, but the Commissioner demonstrates that the claimant is able to perform other kinds of work, the claimant is again found not disabled. *Id*. §§ 404.1520(f), 416.920(f). The ALJ will find the claimant can return to work if he can perform the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation and citation omitted).

In making the step four determination, the ALJ considers the claimant's "residual functional capacity" ("RFC") and the physical and mental demands of the work previously performed. 20

C.F.R. §§ 404.1520(f), 416.920(f); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945. In determining the claimant's RFC, the ALJ must assess all of the evidence, including medical reports and descriptions by the claimant and others of the claimant's relevant limitations. *See id*. §§ 404.1545(a), 416.945(a).

In determining the claimant's RFC, the ALJ is not required to believe every allegation the claimant offers regarding his limitations. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted). The ALJ must follow a two-part inquiry where the disability allegedly stems from subjective allegations of limitation or pain. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007); *see also* Social Security Ruling 96-7p, 61 Fed. Reg. 34483 (July 2, 1996). First, the ALJ determines whether the claimant has presented objective medical evidence of an underlying impairment that reasonably can be expected to produce the alleged symptoms. *Lingenfelter*, 504 F.3d at 1036. Provided that the claimant establishes the underlying impairment, he need not offer objective proof of the alleged limitations. *Id*. Second, where no evidence suggests that the claimant is a malingerer, the ALJ may reject the claimant's allegations only by articulating "clear and convincing" reasons for doing so. *Id*.

In sum, the "clear and convincing" standard requires that the ALJ discuss and cite to the record in sufficient detail for a reviewing court to determine the basis for the credibility determination. Although the ALJ should "specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony[,]" *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001), the ALJ ultimately satisfies the requirement by citing to the record and discussing specific evidence therein. *See Vasquez v. Astrue*, 572 F.3d 586, 591-92 & n.1 (9th Cir. 2008); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (explaining that the ALJ must

"point to specific facts in the record" to support a credibility finding).  The focus is ultimately on the reviewing court: the credibility finding must be "sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony."  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citation and internal quotation omitted); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

Permissible bases for finding the claimant incredible include reputation for untruthfulness, internal contradictions in the claimant's limitations allegations or testimony, conflicts between the allegations and the claimant's conduct (whether daily activities or work record), and the claimant's adherence to the prescribed course of treatment.  *Orn*, 495 F.3d at 636.  "Although lack of medical evidence cannot form the *sole* basis for discounting pain [and limitations] testimony, it is [also] a factor the ALJ can consider in [her] credibility analysis."  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  Relatedly, medical opinions are probative evidence when determining credibility of subjective complaints.  20 C.F.R. §§ 404.1529(c), 416.929(a)(2012); *Rollins*, 261 F.3d at 857 (9th Cir. 2001).  When relying on a discrepancy between subjective complaints and medical evidence, the ALJ carries her burden by pointing to the inconsistency and discussing additional reasons.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  Finally, the ALJ need not make a specific finding on each of these factors for a reviewing court to uphold the decision.  *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989) (holding sufficient the use of two factors).

The burden shifts to the Commissioner to establish, in step five, that the claimant can perform jobs available in the national economy.  20 C.F.R. §§ 404.1560(c), 416.960(c).  If the claimant cannot do the work he or she did in the past, the ALJ must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work.

*Yuckert*, 482 U.S. at 141-42.  The ALJ may meet this burden either through the testimony of a vocational expert or by reference to "the Grids." *Tackett v. Apfel*, 180 F. 3d 1094, 1100 (9th Cir. 1999).  Under either method, the ALJ must identify other occupations available in significant numbers in either the region or several regions of the United States that the claimant can perform. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1560(c), 416.960(c).  If the ALJ establishes that the claimant's RFC allows his performance of other occupations, he is not disabled.  20 C.F.R. §§ 404.1566, 416.966.  Conversely, if the ALJ concludes that the claimant cannot adjust to any other work, the claimant is disabled.  *Id*. §§ 404.1520(g), 416.920(g).

**B.     The ALJ followed the five-step process and concluded plaintiff was not disabled.**

In reviewing plaintiff's claims for benefits, the ALJ followed the five-step process described above.  (AR 39-40).  The ALJ found that plaintiff has not engaged in substantial gainful activity and experiences several severe impairments: asthma, chronic obstructive pulmonary disease, inguinal hernias, status post thoracentesis, gastroesophageal reflux disease, and generalized anxiety disorder. (AR 40).  The ALJ further concluded that the impairments did not equal the severity of any listed impairment in the relevant subpart of the Social Security regulations.  (AR 40-42).

The ALJ made several findings at step four.  First, the ALJ concluded that plaintiff's RFC permits light work with the following additional limitations: occasional postural activities, avoidance of hazards such as heights and moving machinery, avoidance of extreme cold and pulmonary irritants, and limited contact with the public.  (AR 42).

Second, the ALJ held that plaintiff's statements regarding the intensity and limiting nature of his impairments were not credible to the extent they were inconsistent with the RFC finding.  (AR 43).  Because plaintiff's allegations about the effects of his impairments were "not substantiated by the medical evidence," the ALJ considered the entire record to make a credibility finding.  (AR 43).

The ALJ "partially discount[ed]" plaintiff's allegations because his statements were "1) inconsistent with treatment received; 2) out of proportion to the objective clinical findings; 3) internally inconsistent; and 4) inconsistent with daily activities." (AR 43). In some detail, the ALJ focused on discrepancies arising from plaintiff's subjective complaints and his medical records, inconsistencies of plaintiff's daily activities when measured against his complaints, and also the medical provider opinions in the record. (AR 42-45). The ALJ credited the medical opinions and generally accepted the limitations they proposed. (AR 44-45). Under the RFC finding with these limitations, the ALJ determined that plaintiff was unable to perform any past relevant work. (AR 45).

The ALJ found in step five, however, that plaintiff's RFC allowed him to perform three occupations in the national economy. (AR 46). As the ALJ explained, "[i]f the claimant had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed . . . ." (AR 46). But because of the additional limitations found by the ALJ in step four, she sought testimony from an independent vocational expert. (AR 46). The vocational expert opined that plaintiff's RFC permitted him to work as an "Assembler, production," an "Office clerk," and a "Machine operator, production," of which 750,000, 400,000, and 2,500,000 jobs, respectively, exist nationwide. (AR 46). Accordingly, because plaintiff could perform occupations totaling three million jobs with his present limitations, the ALJ found that plaintiff was not disabled and denied the claim. (AR 46).

**C.     The ALJ's step four credibility determination was sufficiently specific and cogent.**

Plaintiff first contends that the ALJ failed to articulate "clear and convincing reasons" for discrediting his pain and limitation allegations when evaluating his RFC in step four of the sequential process. (#13 at 5-8). In particular, plaintiff argues that the ALJ "failed to point to any evidence that substantiates [the four reasons cited by the ALJ for discrediting plaintiff's testimony]."

(#13 at 7). Plaintiff further contests the ALJ's use of daily activity evidence by citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) for the proposition that "the mere fact that a plaintiff has carried on certain daily activities, . . . does not in any way detract from her credibility as to her overall disability." (#13 at 7).

Plaintiff's argument is unpersuasive. The ALJ's decision expresses specific and cogent reasons for the credibility finding. As the ALJ intimates in some detail, plaintiff's medically determinable impairments reasonably may cause the symptoms he alleges, but his assertions regarding the extent and effect of the symptoms are discrepant with the objective medical evidence, his daily activities, and the medical opinions in the record. The ALJ's reliance on these discrepancies is permissible, *see Burch*, 400 F.3d at 681, and also satisfies the ALJ's burden to identify the evidence when discrediting testimony. *See Vasquez*, 572 F.3d at 591-92 & n.1 (approving of the ALJ's citation to, and discussion of, the record).

In concluding plaintiff's limitations allegations were out of proportion to the medical evidence, the ALJ discussed and cited to the record extensively. First, in discussing plaintiff's alleged abdominal pain, the ALJ canvassed the pertinent medical records, which include exam notes and medical imaging impressions. (AR 43). Despite plaintiff's reporting abdominal pain to his provider, the March 2010 exam noted no abdominal abnormalities. (AR 43, 337). As the ALJ emphasized, plaintiff reported improvement of his pain with the use of medication in his January 2012 exam. (AR 43, 525-26).

Second, with respect to plaintiff's shortness of breath, the ALJ again considered and cited to medical records and found inconsistency between plaintiff's allegations and the evidence. (AR 44). Plaintiff's 2010 exams were normal, and although his 2011 exams noted exacerbation of his asthma and wheezing, these symptoms gradually subsided due to his thoracentesis procedure and other

treatment. (AR 44) (discussing plaintiff's treatment and gradual improvement, and citing as needed to the record). "By March 2012, the claimant's lung exam was completely normal." (AR 44).

Finally, the ALJ discussed plaintiff's mental impairments in light of his treatment records. (AR 44). The ALJ specifically observed plaintiff's history of noncompliance with treatment recommendations. (AR 44). It is well established that "the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" when determining credibility. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation and internal quotation omitted). In addition, although the mental health records indicate that plaintiff has a severe anxiety disorder that imposes certain limitations, "[h]is judgment, insight, and thought content remained normal, and there was no evidence of suicidal or homicidal ideations." (AR 44). At appointments, plaintiff was "able to speak and behave normally and demonstrated normal memory, cognition, judgment, and thought content." (AR 44). The medical evidence supporting the ALJ's credibility determination is not only substantial, but is also discussed and cited with sufficient detail that this court can determine the basis for the ALJ's decision. *Moisa*, 367 F.3d at 885.

The ALJ also discredited plaintiff's allegations by pointing to his daily activities. Despite plaintiff's contrary argument, the ALJ may permissibly consider daily activities in the credibility determination. *Morgan*, 169 F.3d at 600 ("the ALJ, in noting [claimant's] activities, pointed to the contradictions between [claimant's] reported activities and his asserted limitations as an issue of credibility"); *Molina*, 674 F.3d at 1112 (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"). Her consideration of daily activities satisfied the requirement that she not rest her credibility determination only upon a discrepancy between the objective medical evidence and plaintiff's subjective complaints. *Bunnell*, 947 F.2d at 346-47.

When the ALJ turned to these activities, she identified contradictions with his subjective complaints. (AR 43). As she explained, plaintiff

> has asserted his impairments cause him to experience abdominal pain, difficulty urinating and moving bowels, frequent and urgent urination, limited mobility, self-isolating behaviors, panic attacks, shortness of breath, paranoia, fatigue, chest pressure/tightness, dizziness, coughing, nervousness, mood swings, trust issues, easy distractibility, and trouble maintaining concentration and attention. Regarding functional limitations, he reported problems remembering, completing tasks, concentrating, understanding, following instructions, using his hands, and getting along with others.

(AR 42-43) (internal citations omitted). "Despite these allegations," however,

> the claimant admitted he has no problem taking care of personal needs; he often takes care of his grandson/babysitting; he does household chores including loading the dishwasher, vacuuming, and laundry; he prepares simple meals daily; and he goes shopping in stores. He has further admitted he is able to pay bills, count change, and use a checkbook/money orders/food stamps; and he follows spoken instructions adequately. For hobbies, he admitted he watches movies and plays with his grandson. He also lives with his son and his son's fiancé, communicates with other family members on a regular basis, and attends regular medical appointments.

(AR 43) (internal citations omitted). Throughout, the ALJ cited to relevant portions of the record. (*See* AR 42-43) (referencing the exhibited admitted at the hearing).

For only one example of the information cited by the ALJ, plaintiff admitted to taking care of his grandson in his hearing testimony and two separate function reports completed just eight weeks apart. (AR 42-43) (citing the same, located at AR 203-10, 252-60, 81-121). In the June 2011 report, plaintiff implied that he took care of his grandson every day, yet he testified at the hearing that he is never alone with the child for any period of significant length. (*Compare* AR 205 *with* AR 108). The ALJ reasonably could view this as inconsistent, and she also reasonably could find babysitting a child inconsistent with a number of plaintiff's symptom and limitations allegations, including limited mobility, lack of energy, fatigue, easy distractibility, concentration difficulty, postural movements, seeing, remembering, completing tasks, concentrating, understanding, following instructions, using

his hands, and getting along with others. (*See* AR 43). Hence, there is substantial evidence on the point, and the ALJ sufficiently identified the issue for the court to understand the basis for her determination. *Moisa*, 367 F.3d at 885.

Additionally, the ALJ's supported her credibility determination by discussing the medical opinion evidence in the record. (AR 44-45). Noticing a lack of any "treating source opinions regarding any physical or mental limitations[,]" the ALJ accorded "great weight" to the opinion of Dr. Rene Pena, who "opined the claimant could perform a limited range of light exertional work" and need be limited only by "avoiding exposure to extreme temperatures, pulmonary irritants and hazards." (AR 44, 500-08). When reviewing plaintiff's records in August 2011, Dr. Pena specifically considered many of his physical ailments, including asthma, inguinal hernias, gastroesophageal reflux disease, and history of pleural effusion with a thoracentesis procedure. (AR 44). Dr. Pena made no finding of physical or mental limitations. (AR 44, 500-08) (expressing therein that objective evidence "fail[ed] to demonstrate [subjective] limitations alleged by [plaintiff]").

As to the opinion evidence regarding plaintiff's mental limitations, the ALJ generally accepted the limitation conclusions offered by two consultants, Dr. Pastora Roldan and Dr. Susan Kotler, who reviewed plaintiff's records. (AR 44-45, 398-411, 482-99). The ALJ incorporated these additional limitations into her step four (and five) determinations. (AR 45-46, 116-17). Where the ALJ did not accept their conclusions, she explained her decision by pointing to the record. (AR 45). First, she noted that the record did not demonstrate plaintiff's inability to perform detailed tasks—a finding for which substantial evidence exists. (AR 206 (plaintiff's admission he is able to conduct various financial tasks), 255 (same), 43 (plaintiff's various daily activities, including personal needs, babysitting, cleaning, cooking, and following spoken instructions), 97 (plaintiff

admitting he buys his own food), 208 (plaintiff indicating he has no problem concentrating or following instructions)). On that basis, she properly accorded only partial weight to their assessments. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (permitting the ALJ to discount medical opinion evidence with specific, legitimate reasons, including where the opinion is "unsupported by the record as a whole").

In the court's view, the ALJ has met her burden by citing and discussing in her decision these areas of the record. Plaintiff apparently seeks more from the ALJ than these passages—perhaps a direct, one-to-one linkage between any given daily activity and the symptom or limitation with which it conflicts, or exact quotation of plaintiff's inconsistent testimony. That level of detail is not required of the ALJ. *See Moisa*, 367 F.3d at 885. Further, even if the ALJ "explain[ed] its decision with less than ideal clarity, [this court] must uphold it if the agency's path may be reasonably discerned." *Molina*, 674 F.3d at 1121 (citations and internal quotation omitted). Although plaintiff correctly points out that the ALJ does not expressly identify which evidence was internally contradictory (#13 at 7), the ALJ need not make a finding on every possible factor relating to credibility to support her determination. *See Fair*, 885 F.2d at 603-04.

At bottom, the evidence underlying the ALJ's credibility determination is substantial, sufficiently identified, and based upon permissible factors. *See Morgan*, 169 F.3d at 599-600 (upholding the ALJ's decision where the "ALJ pointed to specific evidence in the record," which included inconsistencies between medical records and the claimant's limitations testimony); *Vasquez*, 572 F.3d at 591-92 & n.1 (same); *Moisa*, 367 F.3d at 885 (holding ALJ's burden met where a reviewing court need not speculate as to her reasons). Credibility determinations are "the province of the ALJ," *Fair*, 885 F.2d at 604, and the court must decline to second guess a determination supported by substantial evidence. *Tommasetti,*, 533 F.3d at 1039 ("If the ALJ's

finding is supported by substantial evidence, the court 'may not engage in second-guessing.'"). The District Court should therefore affirm the ALJ's credibility finding.

**D.      Substantial evidence supports the ALJ's step five vocational finding.**

Plaintiff next challenges the ALJ's step five vocational determination. As described, the ALJ relied upon the vocational expert's finding that the plaintiff could perform three occupations that, in the aggregate, total over three million jobs nationwide. (AR 45-46). At core, plaintiff maintains that the Commissioner "must demonstrate that there are a significant number of jobs in the region or several regions of the country[,]" and because "[t]he entire United States [is] not a region or several regions of the country[,]" the ALJ made an reversible error. (#13 at 9-10). Plaintiff further contends that "[i]t is quite possible, even likely, that there are not a significant number of the aforementioned occupations in the Reno area or the entire State of Nevada." (#13 at 10).

Plaintiff's argument is unconvincing. First, the statute expressly permits the Commissioner to identify occupations in the claimant's region or across several regions. In requiring the identification of "jobs which exist in the national economy," the statute defines the term "national economy" to include "work which exists in significant numbers *either* in the region where such individual lives *or* in several regions of the country." 42 U.S.C. § 423(d)(2)(A) (emphasis added); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (recognizing the statute is defined "in the disjunctive"). Thus, as a preliminary matter, plaintiff's speculation that the jobs may not exist in the Reno region is inapposite, even if true. *See* 42 U.S.C. § 423(d)(2)(A) (noting that the finding of significant jobs nationwide is sufficient "regardless of whether such work exists in the immediate area where [the claimant] lives"). Although the vocational expert may provide job figures from the claimant's immediate region, the statute does not so require. *See id*.

Second, the weight of authority applied to the facts at hand permits the ALJ's use of only national figures. The Ninth Circuit has not considered whether the ALJ satisfies her burden of identifying a significant number of jobs "in several regions of the country" by relying only on national figures (i.e. without identifying totals in any particular region). However, the court has apparently understood, on several occasions, that the phrase "several regions of the country" equals jobs in the "national economy" or jobs that exist "nationwide." *See, e.g.*, *Gutierrez*, 740 F.3d at 528-29 (assessing "the 25,000 nationwide figure in the context of 'several regions of the country,'" but not remanding on the basis that the figure lacked particular regional totals); *Beltran v. Astrue*, 700 F.3d 386, 389-90 (9th Cir. 2012) (characterizing jobs "in several regions of the country" as "national jobs"); *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (relying on nationwide figures in addition to regional figures).

Although not cited by plaintiff, the court identifies for discussion a recent case from this district, *Green v. Colvin*, that may appear to support plaintiff's position. In *Green*, the court remanded the ALJ's decision because it relied only on national numbers. No. 2:13-CV-083-APG-CWH, 2014 WL 2803185 at *8-10 (D. Nev. June 18, 2014). But as the court explained, the ALJ's identification of only 32,000 nationwide jobs provided insufficient basis to determine whether a "significant" total existed in any of the several regions of the United States. *Id*. The court's reasoning relied on *Beltran v. Astrue*, a Ninth Circuit decision that requires the Commissioner to consider, when determining whether a nationwide jobs figure is "significant," that the total exists over several separate locales. 700 F.3d at 389-90. On that basis, the *Green* court remanded the decision: "it is unclear whether [the 32,000 jobs], when distributed over several regions of the country, would still be significant[,]" 2014 WL 2803185 at *9, and therefore, the court could not

verify that the ALJ had substantial evidence without "speculat[ing] as to the basis of the [ALJ's] findings . . . ." *Id.* at *10.

     *Green* is distinguishable from the instant case because the same concern does not here arise. The ALJ found over three million positions available to plaintiff. The sheer number of jobs identified by the vocational expert is roughly one in every fifty positions (of the nearly 143 million nationwide) that exist in the United States today. *See* Labor Force Statistics from Current Population Survey, U.S. Dep't of Lab., http://www.bls.gov/cps/cpsaat01.htm (Sept. 10, 2014). It is an implausible contention that those three million jobs, even accounting for their distribution across a many regions, fail to exist in "significant" numbers in at least a few regions of the United States. This is particularly so in light of the low threshold for a "significant" finding in this circuit. *See, e.g.*, *Thomas*, 278 F.3d at 960 (holding significant 1,300 regional jobs); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (holding significant 2,300 regional jobs); *Barker v. Secretary of Health & Human Servs.*, 882 F.3d 1474, 1479 (9th Cir. 1989) (holding significant 1,266 regional jobs); *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1987) (holding significant approximately 4,000 regional jobs). The sizeable total of jobs available to plaintiff thus assures this court that the ALJ had substantial evidence to make the step five determination, even without an express finding about any particular region.

     In addition, the holding of *Beltran*, upon which *Green*'s reasoning rests, does not support the argument plaintiff offers. *Beltran* requires only that the Commissioner take into account, when determining the significance of existing jobs, that nationwide figures exist over several regions. It does not impose a further requirement that the Commissioner's national job figures be accompanied by the totals in several regions. *See* 700 F.3d at 389-90. Accordingly, *Beltran* and *Green* require remand only where national figures are sufficiently small that the court cannot conclude without

speculation that several regions contain the occupation(s) in significant number. Naturally, this may in some instances require identification of totals in several regions—namely, when the national figure is sufficiently small. The cases do not, however, flatly bar the Commissioner's use of national figures. This is for good reason, as the statute's terms do not expressly require the Commissioner to identify particular regional totals when relying on the "several regions" clause. *See* 42 U.S.C. § 423(d)(2)(A). "The courts cannot rewrite the definition of disability laid down by Congress." *Martinez*, 807 F.3d at 775 (citation and quotation omitted). The court would be required to do so, however, to adopt the argument plaintiff makes here. The court is not only bound to read the statute as Congress wrote it, but also apply the Ninth Circuit's apparent understanding of the same. Although it is a reasonably open question, the court declines plaintiff's interpretation under the available authority.

Assuming *arguendo* that the ALJ erred at step five by failing to identify the totals in at least some regions, the error is harmless. In the Ninth Circuit, "the court will not reverse the decision of the ALJ for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038. The harmless error doctrine considers "an estimation of the likelihood that the result would have been different[.]" *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 411 (2009)).

As explained, the three million jobs cited by the ALJ must exist in significant numbers in at least a few regions of the country. The significant number requirement of 42 U.S.C. § 423(d) aims to ensure that no claimant is denied benefits "on the basis of the existence of a few isolated jobs." *Walker v. Mathews*, 546 F.3d 814, 819 (9th Cir. 1976). Rather than representing an "isolated" total, the sum of jobs identified by the ALJ, even accounting for their distribution across several regions,

easily surpasses much smaller totals that the Ninth Circuit has previously deemed significant. Hence, even had the ALJ provided the breakdown plaintiff demands, it is exceedingly unlikely that the ALJ's step five determination would have been different. Although remand on this basis would yield a second decision with the breakdown plaintiff seeks, it would be a decision with the same finding of nondisability. Any error was thus harmless. *See Ludwig*, 681 F.3d at 1054.

### IV. CONCLUSION

The court concludes that substantial evidence in the record supported the ALJ's credibility determination. Regarding plaintiff's credibility, the ALJ gave specific and cogent reasons for partially discounting plaintiff's subjective complaints, and the finding was supported by substantial evidence in the record. The court further concludes that the ALJ did not err in making her vocational finding. Therefore, the court recommends that plaintiff's motion for remand and/or reversal (#13) be denied and that defendant's cross-motion to affirm (#14) be granted.

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

/ / /

/ / /

/ / /

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand and/or reversal (#13) be **DENIED** and defendant's cross-motion to affirm (#14) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** accordingly and close this case.

**DATED:** September 29, 2014.



_____
**UNITED STATES MAGISTRATE JUDGE**